UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| TYIASE HASAN, ) | |
| ) | |
| Plaintiff, ) | 20 C 6295 |
| ) | |
| vs. ) | Judge Gary Feinerman |
| ) | |
| ) | |
| THE PNC FINANCIAL SERVICES GROUP, INC., ) | |
| ) | |
| Defendant. ) | |

**MEMORANDUM OPINION AND ORDER**

Tyiase Hasan alleges in this suit under the Fair Debt Collection Practices Act ("FDCPA"), 15 U.S.C. § 1692 *et seq.*, and Illinois law that PNC Financial Services Group, Inc. harassed and wrongfully withheld money from him in connection with an Interest on Lawyers Trust Account ("IOLTA") that his law practice held with PNC. Doc. 1. PNC moves to dismiss the suit under Civil Rules 12(b)(1) and 12(b)(6). Doc. 10. PNC's Rule 12(b)(1) motion is denied, its Rule 12(b)(6) motion is granted as to the FDCPA claims, and—unless and until Hasan succeeds in stating an FDCPA claim—the court will exercise its discretion under 28 U.S.C. § 1367(c)(3) to relinquish its supplemental jurisdiction over the state law claims. Hasan will be given an opportunity to file an amended complaint that repleads all his claims.

**Background**

In resolving a Rule 12(b)(6) motion, the court assumes the truth of the operative complaint's well-pleaded factual allegations, though not its legal conclusions. *See Zahn v. N. Am. Power & Gas, LLC*, 815 F.3d 1082, 1087 (7th Cir. 2016). The court must also consider "documents attached to the complaint, documents that are critical to the complaint and referred to in it, and information that is subject to proper judicial notice," along with additional facts set

1

forth in Hasan's brief opposing dismissal, so long as those additional facts "are consistent with the pleadings." *Phillips v. Prudential Ins. Co. of Am.*, 714 F.3d 1017, 1020 (7th Cir. 2013) (internal quotation marks omitted). The facts are set forth as favorably to Hasan as those materials allow. *See Pierce v. Zoetis, Inc.*, 818 F.3d 274, 277 (7th Cir. 2016). In setting forth those facts at the pleading stage, the court does not vouch for their accuracy. *See Goldberg v. United States*, 881 F.3d 529, 531 (7th Cir. 2018).

Hasan is the sole proprietor of The Law Offices of Tyiase H. Hasan, a law practice in Illinois. Doc. 1 at ¶ 1; Doc. 14-1. In 2013, Hasan opened an IOLTA account with PNC. Doc. 1 at ¶¶ 2, 12; Doc. 14 at 4. On July 24, 2020, Hasan deposited into the account a $100,850 check "from [his] client's case." Doc. 1 at ¶ 13. On July 30, PNC notified Hasan that the deposited funds were available for his use. *Ibid.* The next day, Hasan withdrew some money from the account and attempted to wire transfer $89,000 to a client. *Id.* at ¶ 14. Within an hour, PNC advised Hasan that the wire transfer had been cancelled because it was unable to verify the check that he had deposited. *Ibid.* On August 4, a PNC representative told Hasan that the check was fraudulent, and that considering the funds he withdrew on July 31, his account was negative by $3,003.33. *Id.* at ¶ 15. On August 5, Hasan deposited $3,500 to bring the account back to a positive balance. *Id.* at ¶ 16. He has caused no further activity on the account. *Id.* at ¶ 17.

On September 9, PNC sent Hasan a letter on its own letterhead notifying him that it had closed his IOLTA account and demanding the return of $3,230.61, which according to PNC was the negative balance on the account when it was closed. *Id.* at ¶ 18; Doc. 1-4. PNC's demand for the $3,230.61 was false. Doc. 1 at ¶ 19. In fact, PNC owes Hasan $496.67—*i.e.*, the surplus from the $3,500 he deposited into the then-overdrawn account on August 5. *Ibid.* On September

21, Hasan sent PNC a letter requesting the return of the $496.67 and demanding that it cease and desist from pursuing its false claim against him. *Id*. at ¶ 20; Doc. 1-5.

Weeks later, Hasan received a letter from "NES OF OHIO," identifying itself as "a debt collector" and PNC as the "Current Creditor," and seeking to collect on the $3,230.61. Doc. 1-6. As the complaint describes it, "[PNC] through its agent, 'NES OF OHIO,' harassed [Hasan] with a[] letter from outside of Illinois that falsely claims that [Hasan] owes [PNC] $3230.61." Doc. 1 at ¶ 21. Also in October, "[PNC] harassed [Hasan] with several daily phone calls through its agent, Portfolio Recovery Associates, LLC." *Id*. at ¶ 22.

Hasan brought this suit against PNC in late October. Doc. 1. His federal claims arise under the FDCPA. *Id*. at ¶¶ 25-34. The complaint premises subject matter jurisdiction over the state law claims on the supplemental jurisdiction statute, 28 U.S.C. § 1367(a). Doc. 1 at ¶ 7. Although the complaint alleges that the parties are diverse, it does not invoke the diversity jurisdiction, 28 U.S.C. § 1332(a), apparently because Hasan's claimed damages—actual damages of $496.67, and punitive damages of $5,000—fall below the $75,000 jurisdictional limit. Doc. 1 at p. 8.

## Discussion

PNC argues that Hasan does not have standing to pursue his claims and, in the alternative, that the complaint should be dismissed for failure to state a claim.

**I.     Standing**

PNC contends that Hasan lacks standing because the IOLTA account is held not in his name, but in that of his law practice. Doc. 11 at 4-5. But Hasan's law practice is a sole proprietorship, Doc. 14-1, and "[a] proprietorship is just a name that a real person uses when doing business; it is not a juridical entity," *York Grp., Inc. v. Wuxi Taihu Tractor Co.*, 632 F.3d 399, 403 (7th Cir. 2011). Given that "a sole proprietorship has no legal identity separate from

3

that of the individual who owns it," *Vernon v. Schuster*, 688 N.E.2d 1172, 1176-77 (Ill. 1997), Hasan has standing to bring this suit.

## II.     FDCPA Claims

"The FDCPA is a consumer protection statute that prohibits 'debt collector[s]' from making false or misleading representations and from engaging in various abusive and unfair practices in connection with the collection of a 'debt.'" *Spiegel v. Kim*, 952 F.3d 844, 846 (7th Cir. 2020) (some internal quotation marks omitted). Pertinent here, the FDCPA prohibits a "debt collector" from "engag[ing] in any conduct the natural consequence of which is to harass, oppress, or abuse any person," 15 U.S.C. § 1692d, and from using "false, deceptive, or misleading representation or means," *id*. § 1692e, in connection with the collection of a "debt." Hasan claims that PNC violated those provisions by "falsely represent[ing] to [Hasan] that he owes a debt of $3230.61" on September 9, 2020, and by "harass[ing] [Hasan] with phone calls and a letter" in October 2020. Doc. 1 at ¶¶ 27, 33. PNC argues that Hasan fails to state an FDCPA claim because (1) his allegations do not concern an attempt to collect a "debt" and (2) the complaint does not plausibly allege that PNC acted as a "debt collector." Doc. 11 at 5-7; Doc. 15 at 1-3. Dismissal is warranted on both grounds.

"The FDCPA applies to [a plaintiff's] claim only if what [the defendant] sought to recover … constitutes a 'debt' within the meaning of the statute." *Spiegel*, 952 F.3d at 846. "Congress limited the definition of 'debt' to consumer debt—specifically, to an obligation 'arising out of a transaction in which the money, property, insurance, or services which are the subject of the transaction are primarily for personal, family, or household purposes.'" *Ibid*. (quoting 15 U.S.C. § 1692a(5)). A two-part test governs whether money the plaintiff supposedly owed qualifies as a "debt" under the FDCPA. *See Berman v. GC Servs. L.P.*, 146 F.3d 482, 484-85 (7th Cir. 1998). First, the obligation to pay must "aris[e] from a consensual transaction,

4

where parties negotiate or contract for consumer-related goods or services." *Id*. at 484.  Second, the "money, property, insurance, or services which are the subject of the transaction [must] be primarily for personal, family, or household purposes." *Id*. at 486 (internal quotation marks omitted).

PNC declared Hasan's IOLTA account "overdrawn" because he withdrew funds on July 31, 2020, prior to hearing from PNC that the check he had deposited from "[his] client's case" was fraudulent.  Doc. 1 at ¶¶ 13-19.  The money that PNC sought from Hasan to bring the account into balance was not a "debt" under the governing two-part test.  Even assuming that the first part of the test is satisfied, Hasan fails to satisfy the second part because the complaint does not allege that his debt to PNC—manifested by the negative balance on his account—was incurred "primarily for personal, family, or household purposes."

In determining whether that component of the test is satisfied, it is "relevant to analyze not only whether [the underlying transaction] ha[d] a 'personal, family, or household purpose,'" but also "whether the derivative obligation"—here, Hasan's obligation to maintain and deposit funds into an IOLTA account—"likewise satisfie[s] this requirement." *Berman*, 146 F.3d at 486. By its very nature, an IOLTA account is *not* held "primarily for personal, family, or household purposes." 15 U.S.C. § 1692a(5).  Rather, under the Illinois Rules of Professional Conduct, lawyers must deposit client or third-party funds that are "nominal in amount or are expected to be held for a short time" into an IOLTA account, a "pooled interest- or dividend-bearing client trust account," Ill. R. Prof. Conduct 1.15(f), (j), so that the interest generated from the account can be directed to the Lawyers Trust Fund of Illinois "to make charitable contributions to not-for-profit agencies that provide legal aid to the poor." *Wieland v. Lawyers Tr. Fund of Ill.*, 836 N.E.2d 166, 169 (Ill. App. 2005).  Hasan notes that *some* money in an IOLTA account may

5

ultimately become property of the lawyer, Doc. 14 at 4, but that does not change the fact that the primary purpose of an IOLTA account is to benefit the public, not the lawyer. Given the nature and purpose of an IOLTA account, a debt incurred by an attorney in connection with such an account is not incurred "primarily for personal, family, or household purposes." *See Berman*, 146 F.3d at 486 (holding that a debt arising from the nonpayment of unemployment insurance contributions was not "debt" under the FDCPA because, although the payment obligation "derived from the hiring of … a nanny," a consumer-related service, "unemployment insurance contributions are used for communal purposes"—"to fund the State's payment of benefits to Illinois residents during periods of unemployment"—"and thus [only] indirectly and remotely benefit the contributor"); *Torres v. AT&T Co.*, 1988 WL 121547, at *2 (N.D. Ill. Nov. 9, 1988) (holding that "debts incurred in the running of [a sole proprietorship] are not for 'personal, family or household purposes'" under the FDCPA) (quoting 15 U.S.C. § 1692a(5)).

      Hasan's FDCPA claim fails on the independent ground that the complaint does not plausibly allege that PNC was acting as a "debt collector." *See Ruth v. Triumph P'ships*, 577 F.3d 790, 796 (7th Cir. 2009) ("The FDCPA regulates only the conduct of 'debt collectors' … ."). As pertinent here, "[a] 'debt collector' is defined as a third party that assists or acts as an agent for the creditor; the term does not include the creditor itself." *Catencamp v. Cendant Timeshare Resort Grp.-Consumer Fin., Inc.*, 471 F.3d 780, 781 (7th Cir. 2006) (citing 15 U.S.C. § 1692a(6)). There is an "exception" to the exclusion of creditors from the definition "for a creditor acting on its own behalf," *ibid*., with § 1692a(6) providing that the term "debt collector" "includes any creditor who, in the process of collecting his own debts, uses any name other than his own which would indicate that a third person is collecting or attempting to collect such debts," 15 U.S.C. § 1692a(6).

6

Hasan's argument that PNC qualifies as a "debt collector" under that exception rests on his allegation that PNC, "through its agent, 'NES OF OHIO,'" "harassed [him] with … a letter," and "through its agent, Portfolio Recovery Associates, LLC," "harassed [him] with several daily phone calls." Doc. 1 at ¶¶ 21-22, 33; Doc. 14 at 3. This argument fails, for Hasan does not allege that "NES OF OHIO" or "Portfolio Recovery Associates, LLC" are trade names or pseudonyms used by PNC in attempting to collect the debt itself in a way suggesting that some other firm was doing so. In fact, Hasan alleges the opposite: that NES OF OHIO and Portfolio Recovery Associates, LLC were PNC's "agents," Doc. 1 at ¶¶ 21-22, and thus entities separate from PNC. *See Gunther v. Commonwealth Edison Co.*, 467 N.E.2d 1104, 1106 (Ill. App. 1984) ("It is well established that agency is a consensual, fiduciary relationship between two legal entities, created by law, by which the principal has the right to control the conduct of the agent, and the agent has the power to effect legal relations of the principal.").

The dunning letter confirms as much. Doc. 1-6. The sender of the letter is identified as "NES OF OHIO," with an Ohio address, and the letter states that "[t]he above referenced current creditor"—*i.e.*, "PNC Bank"—"has placed your account with our office for collection," adding that "[t]his communication is from a debt collector." *Ibid*. By its terms, then, the letter clearly distinguishes between the "creditor" (PNC Bank) and the "debt collector" (NES OF OHIO). Given this, Hasan does not plausibly allege or assert that his situation is one in "which a creditor uses a pseudonym to collect a debt—that is, [where the creditor] poses as a debt collector," thus triggering § 1692a(6). *Shula v. Lawent*, 359 F.3d 489, 492 (7th Cir. 2004).

In sum, the FDCPA claims fail because they do not involve a "debt" and because PNC is not plausibly alleged to have acted as a "debt collector."

**III.** **State Law Claims**

As noted, the complaint premises jurisdiction over the state law claims on 28 U.S.C. § 1367(a). Section 1367(c)(3) provides that "[t]he district courts may decline to exercise supplemental jurisdiction over a claim under subsection (a) if … the district court has dismissed all claims over which it has original jurisdiction." 28 U.S.C. § 1367(c)(3). "As a general matter, when all federal claims have been dismissed prior to trial, the federal court should relinquish jurisdiction over the remaining [supplemental] state claims." *Williams v. Rodriguez*, 509 F.3d 392, 404 (7th Cir. 2007); *see also Dietchweiler ex rel. Dietchweiler v. Lucas*, 827 F.3d 622, 631 (7th Cir. 2016). That general rule has three exceptions: "when the [refiling] of the state claims is barred by the statute of limitations; where substantial judicial resources have already been expended on the state claims; and when it is clearly apparent how the state claim[s] [are] to be decided." *Williams*, 509 F.3d at 404; *see also RWJ Mgmt. Co. v. BP Prods. N. Am., Inc.*, 672 F.3d 476, 480 (7th Cir. 2012).

None of the exceptions applies here. First, if this court relinquishes supplemental jurisdiction over the state law claims, Illinois law would give Hasan one year to refile the claims in state court if any claim's limitations period expired while the case was pending here. *See Sharp Elecs. Corp. v. Metro. Life Ins. Co.*, 578 F.3d 505, 515 (7th Cir. 2009) (citing 735 ILCS 5/13-217); *Davis v. Cook Cnty.*, 534 F.3d 650, 654 (7th Cir. 2008) (same). Second, substantial federal judicial resources have not yet been committed to the state law claims. Third, it is not "absolutely clear how the [supplemental] claims can be decided." *Wright v. Associated Ins. Cos.*, 29 F.3d 1244, 1251 (7th Cir. 1994). Because no exception applies, relinquishing jurisdiction over the state law claims is the appropriate course under § 1367(c)(3). *See Dietchweiler*, 827 F.3d at 631; *RWJ Mgmt. Co.*, 672 F.3d at 479-82.

**Conclusion**

PNC's Rule 12(b)(1) motion is denied, its Rule 12(b)(6) motion is granted as to Hasan's FDCPA claims, and the court's supplemental jurisdiction over his state law claims is relinquished under 28 U.S.C. § 1367(c)(3). The dismissal of the FDCPA claims and relinquishment of jurisdiction over the state law claims is without prejudice to Hasan filing an amended complaint that repleads all his claims. *See Runnion ex rel. Runnion v. Girl Scouts of Greater Chi. & Nw. Ind.*, 786 F.3d 510, 519 (7th Cir. 2015) ("Ordinarily, … a plaintiff whose original complaint has been dismissed under Rule 12(b)(6) should be given at least one opportunity to try to amend her complaint before the entire action is dismissed."). Hasan has until May 5, 2021 to file an amended complaint. If he does not do so, the dismissal of the FDCPA claims will convert automatically to a dismissal with prejudice, jurisdiction will be relinquished over the state law claims, and judgment will be entered. If Hasan repleads, PNC will have until May 26, 2021 to file a responsive pleading.

April 15, 2021

_____
United States District Judge